## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ENTEGRIS, INC.

     Plaintiff,

v.                                       CASE NO.: 8:22-cv-1475

JONATHAN TODD BARTLETT,

     Defendant.

_____/

## VERIFIED COMPLAINT

Plaintiff Entegris, Inc. ("Entegris"), by and through its undersigned counsel, brings this action for injunctive relief, monetary damages, the attorneys' fees and expenses that it incurs in this action, and other necessary and proper relief as this Court may deem just and proper.

## PRELIMINARY STATEMENT

1.     This is an action for equitable and legal relief against a former Entegris employee who, in the weeks and months preceding his departure from the company, misappropriated Entegris' trade secrets and transmitted valuable confidential and proprietary Entegris information to his personal possession via portable storage devices.

2.     As Manager of the Technology Development Team at Entegris,[1]

---

[1] Entegris is a supplier of advanced materials and process solutions for the semiconductor, life sciences, and other high-tech industries.

Defendant Jonathan Todd Bartlett ("Bartlett") was privy to trade secrets and confidential information used in Entegris' business (collectively "Confidential Information"); specifically, information and "know-how" concerning the unique technology used in its products for particle characterization systems.

3.     In advance of his resignation, which was effective March 2, 2022, Bartlett misappropriated Entegris' Confidential Information. For months prior to his resignation, Bartlett transferred confidential data and information concerning Entegris' existing technologies and new technologies currently under development to his personal devices. Indeed, he recently admitted that he has over 600,000 electronic files pertaining to his work for Entegris and its predecessor.

4.     Bartlett's reproduction of sensitive and restricted information to his personal storage devices (and subsequent failures to return that information) is a clear violation of Entegris' company policies,[2] the Proprietary Information and Inventions Agreement that Bartlett signed, and Bartlett's common law obligations to Entegris. A true and correct copy of the Proprietary Information and Inventions Agreement that Bartlett signed in October 2018 (the "Agreement") is attached hereto as Exhibit A.

5.     Bartlett's actions also constitute a violation of the Florida Uniform Trade Secrets Act and the Federal Defend Trade Secrets Act insofar as Bartlett has misappropriated Entegris' confidential and proprietary information that qualifies as trade secrets without the express or implied consent of Entegris.

---

[2] The specific policies implicated include Entegris' Confidential Information Policy, IT Security Policy, and Technology Acceptable Use Policy.

6.      Entegris brings this action seeking a temporary restraining order, preliminary injunction, and permanent injunction: (i) enjoining Bartlett from accessing, disclosing, and/or using Entegris' trade secrets and confidential or proprietary information; (ii) directing Bartlett to immediately return to Entegris all hard copies of Entegris' trade secrets and confidential or proprietary information in his possession; (iii) requiring Bartlett to submit his laptop(s), smart phones, tablets, hard drives, flash drives, and any other electronic devices and accounts that he has accessed since March 2, 2021 and are in his possession, custody and/or control for a forensic examination by a third-party vendor so that all of Entegris' trade secrets and confidential or proprietary property and data residing on those devices (including all copies of the files that Bartlett copied to his personal devices while he was employed by Entegris) can be identified, extracted, and deleted from the devices; and, (iv) requiring Bartlett to confirm, under oath, his return of all of Entegris' trade secrets and confidential or proprietary information in his possession and to provide a detailed accounting of what he did with the documents and information that he took from Entegris.

7.      Entegris also seeks monetary damages stemming from Bartlett's willful and malicious actions and attorneys' fees pursuant to the express language of the Agreement.

## THE PARTIES

8.     Plaintiff Entegris, Inc. is a Delaware corporation with its headquarters and principal place of business at 129 Concord Road, Billerica, Massachusetts 01821.

9.     Defendant Bartlett is the former Manager of the Technology Development Team at Entegris. His last known address is 4225 Headsail Drive, New Port Richey, Florida 34652.

## JURISDICTION AND VENUE

10.     This Court has personal jurisdiction over Bartlett as he lives and worked in this district and expressly consented to jurisdiction in Florida in the Agreement. *See* Ex. A, § 8.6.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(l) because Bartlett is the only Defendant in this action, and he resides in Florida.

12.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Entegris' claim under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836, *et seq.*, arises under federal law, and this Court has supplemental subject-matter jurisdiction over Entegris' remaining state law claims pursuant to 28 U.S.C. § 1367 because they are so related to Entegris' federal DTSA claim that they form part of the same case or controversy and derive from a common nucleus of operative facts.

13.     This Court also has subject-matter jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy in the present action exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and

costs, and complete diversity of citizenship exists between the parties, as Entegris is a citizen of Delaware and Massachusetts, and Bartlett is a Florida citizen.

## FACTUAL ALLEGATIONS

### *Entegris' Business and Confidential Information*

14.     Entegris is a global supplier of advanced materials and process solutions for the semiconductor, pharmaceutical, life sciences, and other industries. Its broad portfolio of products and solutions include: filtration products that purify gases and fluids; liquid systems and components that dispense, control, analyze, or transport process fluids; gas delivery systems that safely store and deliver toxic gases; specialty chemistries for semiconductor manufacturing; wafer carriers and shippers that protect semiconductor wafers from contamination and breakage; specialty coatings that provide high-purity surfaces for wear-resistance, corrosion protection, and smoothness; premium graphite and silicon carbide for high-performance applications; and shippers and trays for protecting and transporting disk drive components, to name a few.

15.     Entegris' particle characterization group generates sizable revenue for Entegris: approximately $16 million in 2021.

16.     Bartlett worked within Entegris' Instrumentation Business Unit. The Technology Development Team that he managed is responsible for developing new technologies and developing enhancements to existing technologies specifically for products used in particle characterization systems. Generally, particle characterization is the process of identifying the particle size, particle shape, and surface properties.

Analyzing particle behavior is a factor for quality control and product performance in many different industries. Particle characterization systems are used to monitor and analyze the health of liquids (or slurries) by identifying the size and number of particles that they may contain.

17.     The Technology Development Team develops test equipment that uses lasers to analyze opaque slurries. These unique sensor technologies developed by Entegris are applied in a variety of industries, including the semiconductor and pharmaceutical industries. By way of example, part of the semiconductor manufacturing process involves the use of particles suspended in slurries to polish the surface of thin slices of a semiconductor (*i.e.*, "wafers"). If the particles in the slurries are not with a specified dimensional range, they can cause damage to the wafers and significant yield loss. The sensor technologies developed by Entegris allow semiconductor manufacturers to monitor the size of the particles in the slurries and alert them to take corrective action.

18.     In his role as Manager of the Technology Development Team, Bartlett was privy to Entegris' Confidential Information regarding both the company's existing sensor technologies and new technologies under development.

19.     Entegris researched, developed, accumulated, maintained, and refined its Confidential Information over many years and with great effort and expense. Its Confidential Information includes, among other things, the technologies and software used in its products for particle characterization systems. Indeed, Entegris is considered an industry leader in the particle characterization field.

20.     Notably, Entegris' Confidential Information includes measurements and other data concerning lasers and sensors used for the particle characterization test methodology; results from testing and other research on Entegris' particle characterization systems; software and firmware used for the particle characterization systems; methods for testing the particle characterization systems; improvements, designs, methods and additional analysis concerning the development and operation of the particle characterization systems.

21.     Entegris' Confidential Information is not generally known to the public, nor is it shared with third parties absent a nondisclosure agreement.

22.     Accordingly, it would be virtually impossible for a third party to recreate Entegris' particle characterization systems without access to Entegris' Confidential Information.

23.     Entegris' Confidential Information provides Entegris with a significant advantage over its competitors who do not know or use the Confidential Information. Disclosure of Entegris' Confidential Information to its competitors would permit them to rapidly develop identical, competing products and technologies and bring them to market. And, without having to incur Entegris' significant research and development costs, a competitor could undercut Entegris' prices and engage in a price war. Accordingly, the protection of the Confidential Information is paramount to the continued success of Entegris' particle characterization business.

24.     There is an acute need to protect Entegris' Confidential Information because certain patents for its sensor technologies used in particle characterization

systems will expire at the end of 2022. Accordingly, if a competitor obtained Entegris' Confidential Information now, it would have the unfair advantage of being able to circumvent the lengthy and expensive research and development process and go directly to manufacturing a competing product.

25.     Entegris has recognized and continues to recognize the paramount importance of safeguarding its Confidential Information and, in addition to having Bartlett and other employees sign confidentiality agreements, it has taken numerous steps to safeguard the secrecy and limit access to such information.

26.     For example, among other things, Entegris:

   a.   requires employees like Bartlett to sign employee agreements containing nondisclosure and other restrictive covenants;

   b.   has policies that are designed to identify and protect its Confidential Information;

   c.   uses passwords to protect its systems containing Confidential Information and prohibits the sharing of passwords;

   d.   labels documents, emails, and other materials containing its Confidential Information as "Confidential" and requires employees to do the same;

   e.   limits access to Confidential Information to those employees who need to know the information in order to perform their roles for Entegris;

   f.   limits visitor access and requires visitors to sign confidentiality agreements prior to their visits to Entegris;

   g.   requires employees to carry badges in order to access Entegris' facilities;

h. terminates employees' access to Entegris' systems immediately upon termination or, in certain circumstances, upon their notice of resignation;

i. requires departing employees to submit written confirmation of their confidentiality obligations;

j. requires third parties to sign confidentiality agreements prior to Entegris' disclosure of Confidential Information to them;

k. trains employees on the importance of protecting Entegris' Confidential Information; and

l. has implemented technological and other physical barriers and other mechanisms that prevent the unauthorized access to its Confidential Information.

### *Bartlett's Employment with Entegris and Access to Entegris' Confidential Information*

27. Bartlett began working for Entegris in January 2018, when Entegris acquired the company where he had been working for years, Particle Sizing Systems, LLC. Bartlett made it clear from the outset of the acquisition that he was unhappy being part of a larger company that he perceived to be more bureaucratic.

28. At all relevant times, Bartlett held the role of Manager of the Technology Development Team within Entegris's Instrumentation Business Unit. Throughout his employment with Entegris, Bartlett occupied a position of trust and confidence, with access to sensitive and confidential aspects of Entegris' business.

29.     There are three core sensor technologies that Entegris' Technology Development Team focuses on: 1) LE (used for analyzing large-sized particles); (2) FX (used analyzing for midrange-sized particles); and (3) FX Nano (used for analyzing the smallest-sized particles). Entegris' primary product lines in this field are the AccuSizer® and the Nicomp® instruments.

30.     So that he could perform his work for Entegris, Bartlett was provided – and, indeed, helped to develop – some of Entegris' Confidential Information, including without limitation, intellectual property, trade secrets, and other confidential and proprietary information regarding Entegris' unique sensor technologies and products for particle characterization systems (both existing and new ones under development to be brought to market); research and development of such technologies and products; data and analysis regarding the development of such technologies and products; technical "know how" regarding the development and manufacture of such technologies and products; software code for such technologies and products; firmware for such technologies and products; the target customer base for both existing technologies and products and new ones under development; and Entegris' plans to develop technologies and products for its target customer base.

31.     There are only a limited number of people at Entegris (*i.e.*, fewer than a dozen) who know how its sensor technologies for particle characterization systems operate, and Bartlett was one of them. Therefore, at the time Bartlett resigned from Entegris, he was extremely well-positioned to unfairly divert Entegris' Confidential Information.

### *Bartlett Agreed not to Take or Disclose Entegris'*
### *Confidential Information*

32.     The Agreement contains nondisclosure and other obligations. *See* Ex. A.

Bartlett was represented by his own counsel during the negotiation of the Agreement,

and those negotiations lasted for months before the parties reached mutually

acceptable terms and executed the Agreement in October 2018.

33.     Pursuant to the Agreement, Bartlett agreed that he would not, during or

after the termination of his employment with Entegris, use or disclose any of Entegris'

Confidential Information except as required by his responsibilities to Entegris:

> Employee (a) shall use the Confidential Information solely
> in connection with the performance of services for the
> Company, (b) shall keep secret and confidential, and hold
> in the strictest confidence and trust, all Confidential
> Information, and (c) shall not, either directly or indirectly,
> (i) disclose such Confidential Information to any third
> party, or (ii) use (or permit any other party to use) any
> Confidential Information for any purpose other than the
> performance of services for the Company.

Ex. A, § 2.2 ("NONDISCLOSURE OF COMPANY CONFIDENTIAL
INFORMATION").

34.     In the Agreement, "Confidential Information" is defined as follows:

> all Trade Secrets, knowledge, data and other information
> owned, held, or known by the Company or any Affiliate
> and relating to products, potential products, contracts,
> specifications, processes, know-how, designs, formulas,
> data, Inventions and Works of Authorship, customer lists,
> business plans, marketing plans and strategies, pricing
> strategies and other subject matter pertaining to any
> research, business, or planned or contemplated business of
> the Company, any Affiliate of the Company, or any
> customer of the Company or other party that heretofore has
> or hereafter may contract with the Company for the

> performance of services or delivery of products.
> Confidential Information shall include such information as
> is currently owned, held, or known by the Company and
> such other information as the Company may develop or
> receive in the future through Employee's efforts or
> otherwise.

Ex. A, § 1.4.

35. Via the Agreement, Bartlett also committed that he would not copy the

Confidential Information for unauthorized use and would follow Entegris'

instructions concerning the Confidential Information:

> Employee (a) shall not reproduce or otherwise make copies
> of any Confidential Information without the prior written
> consent of the Company (except as reasonably necessary to
> perform services as an employee of the Company), and (b)
> immediately upon the request of the Company, shall return
> to the Company or destroy all copies of all items embodying
> any Confidential Information then in the possession of
> Employee.

Ex. A, § 2.5 ("REPRODUCTION AND RETURN").

36. Bartlett further agreed that any breach of the Agreement would entitle

Entegris to preliminary or other injunctive relief, without bond, in addition to damages

and other remedies, as follows:

> Employee (a) acknowledges that any violation of the
> provisions of this Agreement by Employee may cause the
> Company immediate and irreparable damage for which the
> Company cannot be adequately compensated by monetary
> damages, (b) therefore agrees that in the event of any such
> breach, the Company shall be entitled to such preliminary
> or other injunctive relief, an order for specific performance,
> and any other equitable relief that a court may determine to
> be appropriate, without any need for the Company to post
> any bond or other collateral in connection with any such
> order, ( c) further agrees that such equitable relief shall be in

addition to any damages or other remedies provided by law and otherwise available to the Company by reason of Employee's breach, and (d) waives any requirement that the Company post a bond or other assets as a condition of obtaining any injunction or other equitable relief.

Ex. A, § 6 ("ENFORCEMENT").

37.    The Agreement contains a fees provision that entitles the prevailing party in any action to construe or enforce the terms of the Agreement to recover its attorneys' fees and costs. Ex. A, § 8.5 ("ATTORNEYS' FEES").

38.    The Agreement was specifically designed to protect Entegris' Confidential Information and to ensure that – when Bartlett left the company – Entegris would have the ability to retrieve from him and ensure the protection of its Confidential Information.

39.    In consideration of the Agreement, Bartlett was employed by Entegris and provided with the benefits that flowed therefrom, including an annual base salary of $182,069.16, annual bonuses as high as $66,855.80, Restricted Stock Unit Awards with a potential value of $48,000, and access to Entegris' Confidential Information, none of which would have been extended to Bartlett absent his execution of the Agreement.

40.    In further consideration of the Agreement, as provided therein, Entegris and Bartlett entered into a Retention Bonus Agreement concurrent with the Agreement. Ex. A, page 1. A true and correct copy of the Retention Bonus Agreement that Bartlett signed in October 2018 (the "Bonus Agreement") is attached hereto as Exhibit B.

41.     According to the Bonus Agreement, as an incentive to remain employed by Entegris following its acquisition of Particle Sizing Systems, LLC, Entegris agreed to pay Bartlett a lump sum cash payment equal to 50% of his base earnings for one year upon the satisfaction of certain criteria. Ex. B, page 1. In 2019, Entegris paid Bartlett the agreed-upon bonus.

*Bartlett Resigned and Refused to Disclose His Post-Employment Plans to Entegris*

42.     Beginning in July 2021, Chad Walberg assumed the role of Senior Director of Entegris' Instrumentation Business Unit, which included the Particle Sizing Systems engineering group (of which Bartlett was a part) and the Global Measurement Technologies Instrumentation engineering group. Mr. Walberg decided to combine the two existing engineering groups, with those groups reporting to a single leader. Mr. Walberg selected George Gonnella to be the leader of this new, combined engineering group. Mr. Walberg announced these changes on September 30, 2021.

43.     Bartlett would have kept his same title and role, however Bartlett's direct reports would transition to George Gonnella in the combination of the engineering groups within the Instrumentation Business Unit; nevertheless, he indicated to Mr. Walberg that he was no longer interested in staying at Entegris or reporting to Mr. Gonnella. Consequently, Mr. Walberg, Mr. Gonnella, and Bartlett worked together in October 2021 to create a mutually beneficial plan for Bartlett's departure from Entegris.

44.     As part of that transition plan, Bartlett was tasked with meeting benchmarks for various projects, including projects involving the development of new

14

technological enhancements to Entegris' products for particle characterization systems. In exchange for his continued employment and meeting those objectives, Entegris agreed to give Bartlett his incentive bonus and all restricted stock units that had vested by his final day of employment. Bartlett's transition plan also required him to fully support the transfer of knowledge (both documented and tribal) to Mr. Gonnella and the Technology Development Team members, and it further required him to consistently uphold Entegris' corporate values or "PACE" values in all interactions through the transition. PACE is an acronym, and the "A" stands for the values of "accountability, integrity, and trust."

45.     Bartlett's last official day at Entegris was March 2, 2022, although he was physically out of the office and using accrued paid time-off for approximately one week beforehand.

46.     As Bartlett's employment with Entegris was nearing its end, Entegris reached out to Bartlett at least seven times (by five emails and two calls) beginning in mid-February 2022, seeking to schedule an exit interview with him and to obtain, through a "Legal IP / Confidentiality Confirmation Upon Employee Exit" form (the "Exit Form"), his assurances that – consistent with his Agreement – he would return to Entegris all of its confidential information and not retain or disclose any such information. True and correct copies of those emails, plus the Exit Form attachment, are attached hereto as Exhibit C.

47.     Bartlett never even responded to Entegris' attempts to schedule an exit interview or to discuss the Exit Form, let alone returned the Exit Form. He also

ignored a text from Mr. Walberg to his personal mobile number regarding the need to complete the Exit Form. Further, Bartlett has steadfastly refused to disclose his post-employment plans to Entegris.

48.     In accordance with Entegris' policy, Bartlett's access to Entegris' systems was terminated upon his departure, and he returned his Entegris laptop. Bartlett has not returned any other electronic storage or other devices (such as USBs) to Entegris before or any time after his termination.

*Bartlett Offloaded Entegris'*
*Confidential Information Prior to His Resignation*

49.     Since Bartlett's departure, Entegris has learned that – in the weeks and months leading up to his resignation – Bartlett moved certain Entegris' Confidential Information to his personal possession, including through the use of multiple electronic storage devices.

50.     Forensic analysis of Bartlett's Entegris-issued laptop shows that he inserted at least six USB devices into the laptop, including as recently as February 23, 2022 – mere days before he left Entegris.

51.     Forensics also show that, leading up to his departure, Bartlett accessed and saved dozens of Entegris files to the various USB drives, including files containing Confidential Information, including information relating to Entegris' product development and testing, internal data collection and analyses, and strategic business and technological discussions of its FX Nano products.

52.     There is no way that Entegris' clients or competitors could access the Confidential Information that Bartlett transferred to his personal possession unless the Confidential Information was misappropriated from Entegris. The confidential nature of this information allows Entegris to compete in the marketplace and having that information outside of the "four walls" of the company would harm the company's competitive standing in the marketplace and provide whoever has access to that information with an unfair competitive advantage.

53.     On information and belief, Bartlett still possesses the six USB drives and the Confidential Information contained in them.

54.     The activity conducted on Bartlett's Entegris-issued laptop confirms that he engaged in the calculated and unauthorized offloading of Entegris' Confidential Information on his way out the door. That he refused to reaffirm his confidentiality obligations in connection with his departure, or to disclose to Entegris his post-employment plans, further suggests that Bartlett plans to use and/or disclose, or has already begun using and/or disclosing, Entegris' Confidential Information for his own benefit, potentially in competition with Entegris.

*Bartlett Refused to Return Entegris' Confidential Information
and Provide Necessary Assurances*

55.     Around the time of Bartlett's last day at Entegris, two other employees within Entegris' Instrumentation Business Unit gave their notices of resignation. The timing of these departures in close proximity to Bartlett's last day, coupled with Bartlett's avoidance of Entegris' employee exit process and his failure to reaffirm his

17

ongoing confidentiality obligations, put Entegris on "high alert" for improper conduct. Consequently, Entegris engaged a third-party vendor to perform a forensic analysis of Bartlett's Entegris-issued laptop. The forensic analysis showed that Bartlett saved several Entegris files that appear to contain Confidential Information to a removable USB storage device.

56.     Based on the results of its forensic analysis of Bartlett's Entegris-issued laptop, Entegris sent a demand letter to Bartlett through its outside counsel on May 13, 2022. A true and correct copy of the letter (the "Demand Letter") is attached hereto as Exhibit D.

57.     In the Demand Letter, Entegris reminded Bartlett of his legal obligations to Entegris, identified its concerns regarding Bartlett's pre-departure activity with respect to its Confidential Information, asked Bartlett to provide certain information and assurances necessary to help protect the information, and provided a copy of the Agreement. *See* Ex. D.

58.     Among Entegris' requests, Entegris asked Bartlett to identify the name of his new employer, to provide a description of his role there, and to assure Entegris that he would notify his new employer of his obligations under the Agreement. *See* Ex. D.

59.     Bartlett responded to the Demand Letter on May 20, 2022, through counsel. A true and correct copy of the letter (the "Response") is attached hereto as Exhibit E.

60.     In the Response, Bartlett not only confirmed that he had retained Entegris' files after leaving Entegris but – for the first time – disclosed that he had at

least 682,015 electronic files, in 20,720 folders, in his possession relating to Entegris and Particle Sizing Systems, LLC. The Response also confirmed that Bartlett has hardcopy documents belonging to Entegris. *See* Ex. E.

61.     Bartlett also confirmed that, within the last 12 months, he had accessed two personal computers, three electronic storage drives, and six cloud-based storage accounts or email accounts. *See* Ex. E.

62.     The Response also confirmed that Bartlett has four thumb drives containing information that belongs to Entegris. It is unclear, however, whether the drives referenced in the Response match any of the six drives identified through forensics. *See* Ex. E.

63.     Nevertheless, Bartlett refused to provide Entegris access to his personal devices or accounts, or certain other files containing IP he unilaterally deemed to belong to him. *See* Ex. E.

64.     In the Response, Bartlett also again refused to disclose his new employer or to even notify his new employer of his obligations under the Agreement. *See* Ex. E.

65.     While Bartlett did offer, conceptually, to return some of Entegris' files, it is unclear what of its property Bartlett actually planned to return, particularly in light of his position that certain types of information belong to him. *See* Ex. E. Bartlett has not returned any of Entegris' Confidential Information following his departure.

66.     Furthermore, Bartlett refused to toll any applicable statute of limitations to permit Entegris to try to resolve the matter prior to filling litigation. *See* Ex. E.

67.     Finally, Bartlett closed his letter with the baseless accusation that Entegris' Demand Letter constituted harassment.  Specifically, he threatened that "[s]hould Entegris continue to harass and pursue Mr. Bartlett without any basis in law or fact, Mr. Bartlett reserves all rights to pursue, and remedies available, against Entegris…."

68.     In actuality, there is no legitimate justification for Bartlett's transferring Entegris' Confidential Information to his personal possession and then delaying its immediate return to Entegris. Bartlett's obfuscation of his post-Entegris employment plans underscores that his actions were willful and malicious.

### Entegris' Irreparable and Ongoing Harm

69.     Bartlett intentionally and impermissibly moved Entegris' Confidential Information into his personal possession leading up to his departure. He has since retained and failed to return Entegris' Confidential Information. Coupled with his staunch refusals to disclose his post-departure plans, this activity strongly suggests that Bartlett plans to use and/or disclose, or has already begun using or disclosing, Entegris' Confidential Information for his own benefit, potentially in competition with Entegris.

70.     Bartlett's misconduct in this regard has irreparably harmed, and continues to irreparably harm, Entegris. If Entegris is unable to secure its Confidential Information, it will lose the value of that information and the competitive benefit it receives by virtue of keeping it confidential, particularly from competitors.

71.     On information and belief, absent this Court's intervention, Bartlett will continue to irreparably harm Entegris and cause Entegris to permanently lose its trade secrets and other confidential information.

### *Bartlett Would Not Be Harmed by the Proposed Order*

72.     Entegris' Proposed Order on its Motion for Temporary Restraining Order, Limited Expedited Discovery, and Preliminary Injunction (the "Proposed Order") will not prejudice or otherwise harm Bartlett.

73.     The Proposed Order merely seeks what Entegris is entitled to, both under the Agreement and state and federal trade secrets law – the return of its trade secrets and other confidential information, and the requirement that Bartlett not access, disclose, use, and/or retain such information (whether on his own behalf or on behalf of any third party).

74.     Additionally, in light of Bartlett's pre-departure activity and refusal to disclose his post-employment plans, as well as his position that certain Entegris information belongs to him, the Proposed Order seeks limited expedited discovery, including a process by which Entegris can review the accounts and devices that Bartlett had access to leading up to and following his resignation to identify, locate, and safely remove Entegris' Confidential Information from his possession and to ascertain his activities with respect to such materials.

75.     The relief sought by Entegris' Proposed Order would not prejudice or otherwise harm Bartlett. Entegris is not seeking to prevent or even limit Bartlett's ability to obtain work elsewhere. Further, while the review of a former employee's

personal devices and accounts can sometimes raise privacy concerns, Entegris is willing to mitigate those concerns through a protocol that would be executed by a third-party vendor. And, unfortunately, here, Bartlett has moved Entegris files to his personal devices and then taken the position that certain files are his, such that an independent review of those devices is unavoidable.

## COUNT I – BREACH OF CONTRACT

76.     The Agreement is governed by Delaware law. Ex. A, § 8.6.

77.     Bartlett agreed to, and intended to be bound by, the Agreement and received valid consideration in support thereof. In consideration of the Agreement, among other things, Bartlett was employed by Entegris and received all the benefits that flowed therefrom, including an annual base salary of $182,069.16, annual bonuses as high as $66,855.80, Restricted Stock Unit Awards with a potential value of $48,000, and access to Entegris' Confidential Information. None of these benefits would have been extended to Bartlett absent his agreement to the Agreement.

78.     The Agreement is a binding and enforceable contract that is necessary to protect the legitimate business interests of Entegris, including without limitation, its trade secrets and other confidential information, and it is reasonable in all respects.

79.     Pursuant to the Agreement, Bartlett agreed that he would maintain Entegris' Confidential Information as confidential and not use or disclose the information for any purpose other than his performance of services for Entegris. Ex. A, § 2.2.

80.     Pursuant to the Agreement, Bartlett also agreed that he would not reproduce or otherwise make copies of Entegris' Confidential Information without Entegris' written consent. Ex. A, § 2.5.

81.     Pursuant to the Agreement, Bartlett also agreed that, immediately upon the request of Entegris, he would return to Entegris or destroy all copies of items containing any of Entegris' Confidential Information. Ex. A, § 2.5.

82.     Pursuant to the Agreement, Bartlett also agreed that his violation of the Agreement would cause Entegris immediate and irreparable damage and, therefore, that, in the event of any such breach, in addition to damages, Entegris would be entitled to preliminary or other injunctive relief against Bartlett, and any other equitable relief that a court determined to be appropriate, without the need for bond or other collateral. Ex. A, § 6.

83.     Pursuant to the Agreement, Bartlett also agreed that the prevailing party in any action to construe or enforce the terms of the Agreement would be entitled to recover its attorneys' fees and costs. Ex. A, § 8.5.

84.     By the terms of the Agreement, Bartlett's obligations under the Agreement survive the termination of his employment with Entegris. Ex. A, § 8.12.

85.     Entegris fulfilled its obligations under the Agreement by employing and generously compensating Bartlett, in addition to providing him with access to its Confidential Information.

86.     By the conduct described above, including the intentional copying, offloading, and unauthorized retention of Entegris' Confidential Information as well

as, on information and belief, his unauthorized use and/or disclosure of such Confidential Information for purposes other than performing his role with Entegris, Bartlett has materially breached the terms of the Agreement.

87.    As a direct and proximate result of Bartlett's breach of the Agreement, Entegris has suffered and will continue to suffer, or inevitably will suffer, irreparable harm, including without limitation, the loss of its Confidential Information, competitive advantage, and market share.

88.    As a direct and proximate result of Bartlett's breach or inevitable breach of the Agreement, Entegris will continue to suffer irreparable harm unless Bartlett is enjoined as requested in the proposed Protective Order.

89.    Greater injury will be inflicted on Entegris by the denial of this relief than will be inflicted on Bartlett by granting relief.

**COUNT II – TRADE SECRET MISAPPROPRIATION**
**IN VIOLATION OF THE FLORIDA UNIFORM TRADE SECRETS ACT**
**Fla. Stat. § 688.001, et seq.**

90.    In his position at Entegris, Bartlett had access to, developed, and learned Entegris' trade secrets, including those as defined under the Florida Uniform Trade Secrets Act ("FUTSA"). *See* Fla. Stat. § 688.002. Additionally, the documents that Bartlett accessed throughout his employment with Entegris, including in the days and weeks leading up to his departure, contain trade secrets as defined under the FUTSA. *See* Fla. Stat. § 688.002.

91.    Entegris has expended substantial resources in developing, refining, and maintaining its trade secrets for its exclusive benefit. Entegris' trade secrets derive

economic value from the fact that that they are neither generally known nor readily ascertainable by proper means by any third parties.

92.     In the absence of appropriate protections (like the use of nondisclosure agreements), Entegris does not disclose its trade secrets to its competitors, clients, industry consultants, or the marketplace, and has made reasonable efforts to protect them from unauthorized disclosure.

93.     Entegris communicated its trade secrets to Bartlett in confidence during his employment and with the understanding that he would only use them in the conduct of Entegris' business. Bartlett knew, as evidenced by the Agreement, that Entegris intended for all such information to remain confidential and to be used by him solely in the conduct of Entegris' business.

94.     Bartlett misappropriated Entegris' confidential and proprietary information that qualifies as trade secrets without the express or implied consent of Entegris.

95.     As a direct and proximate result of Bartlett's actual, threatened, and/or inevitable misappropriation of Entegris' trade secrets, Entegris has suffered and/or will suffer irreparable harm.

96.     Entegris is entitled to injunctive relief to prevent Bartlett's continued actual, threatened, and/or inevitable misappropriation of its trade secrets. *See* Fla. Stat. § 688.003. Without injunctive relief, Entegris will be irreparably harmed by Bartlett's continued actual, threatened, and/or inevitable misappropriation of its trade secrets.

97.     As a direct and proximate result of Bartlett's actual, threatened, and/or inevitable misappropriation of trade secrets, Entegris has suffered and/or will suffer substantial damages, the precise amount of which will be determined at trial.

98.     Bartlett's conduct has been willful, malicious, and outrageous and undertaken with reckless indifference to the rights or interests of Entegris, warranting an award of exemplary damages pursuant to the FUTSA.

99.     Entegris is entitled to the attorneys' fees that it incurs in this action pursuant to the FUTSA. *See* Fla. Stat. § 688.005.

## COUNT III – TRADE SECRET MISAPPROPRIATION IN VIOLATION OF THE DEFEND TRADE SECRETS ACT 18 U.S.C. § 1836, et seq.

100.    In his position at Entegris, Bartlett had access to, developed, and learned Entegris' trade secrets, including those defined under the Defend Trade Secrets Act ("DTSA"). *See* 18 U.S.C. § 1839(3). Those trade secrets are related to products and/or services used in, or intended for use in, interstate or foreign commerce. *See* 18 U.S.C. § 1836(b)(1). Additionally, the documents that Bartlett accessed throughout his employment with Entegris, including in the days and weeks leading up to his departure, contain trade secrets as defined under the DTSA. *See* 18 U.S.C. § 1839(3).

101.    Entegris expended substantial resources in developing, refining, and maintaining its trade secrets for its exclusive benefit. Entegris' trade secrets derive economic value from the fact that that they are neither generally known nor readily ascertainable by proper means by any third parties.

102.    In the absence of appropriate protections (like the use of nondisclosure agreements), Entegris does not disclose its trade secrets to its competitors, clients, industry consultants, or the marketplace, and it has made reasonable efforts to protect them from unauthorized disclosure.

103.    Entegris communicated its trade secrets to Bartlett in confidence during his employment and with the understanding that he would only use them in the conduct of Entegris' business. Bartlett knew, as evidenced by the Agreement, that Entegris intended for all such information to remain confidential and to be used by him solely in the conduct of Entegris' business.

104.    Bartlett misappropriated Entegris' confidential and proprietary information that qualifies as trade secrets without the express or implied consent of Entegris. *See* 18 U.S.C. § 1839(5). Bartlett's misappropriation occurred after the DTSA's effective date (May 11, 2016).

105.    As a direct and proximate result of Bartlett's actual, threatened, and/or inevitable misappropriation of Entegris' trade secrets, Entegris has suffered and/or will suffer irreparable harm.

106.    Entegris is entitled to injunctive relief to prevent Bartlett's continued actual, threatened, and/or inevitable misappropriation of its trade secrets. Without injunctive relief, Entegris will be irreparably harmed by Bartlett's actual, threatened, and/or inevitable misappropriation of its trade secrets.

107.   As a direct and proximate result of Bartlett's actual, threatened, and/or inevitable misappropriation of trade secrets, Entegris has suffered and/or will suffer substantial damages, the precise amount of which will be determined at trial.

108.   Bartlett's conduct has been willful, malicious, and outrageous and undertaken with reckless indifference to the rights or interests of Entegris, warranting an award of exemplary damages pursuant to the DTSA.

109.   Entegris is entitled to the attorneys' fees that it incurs in this action pursuant to the DTSA.

## COUNT IV – TRADE SECRET MISAPPROPRIATION
## IN VIOLATION OF FLORIDA COMMON LAW

110.   In his position at Entegris, Bartlett had access to, developed, and learned Entegris' trade secrets, including those defined under Florida common law. Additionally, the documents that Bartlett accessed throughout his employment with Entegris, including in the days and weeks leading up to his departure, contain trade secrets as defined under Florida common law.

111.   Entegris expended substantial resources in developing, refining, and maintaining its trade secrets for its exclusive benefit. Entegris' trade secrets derive economic value from the fact that that they are neither generally known nor readily ascertainable by proper means by any third parties.

112.   In the absence of appropriate protections (like the use of nondisclosure agreements), Entegris does not disclose its trade secrets to its competitors, clients,

industry consultants, or the marketplace, and has made reasonable efforts to protect them from unauthorized disclosure.

113.    Entegris communicated its trade secrets to Bartlett in confidence during his employment and with the understanding that he would only use them in the conduct of Entegris' business. Bartlett knew, as evidenced by the Agreement, that Entegris intended for all such information to remain confidential and to be used by him solely in the conduct of Entegris' business.

114.    Bartlett misappropriated Entegris' confidential and proprietary information that qualifies as trade secrets without the express or implied consent of Entegris.

115.    As a direct and proximate result of Bartlett's actual, threatened, and/or inevitable misappropriation of Entegris' trade secrets, Entegris has suffered and/or will suffer irreparable harm.

116.    Entegris is entitled to injunctive relief to prevent Bartlett's continued actual, threatened, and/or inevitable misappropriation of its trade secrets. Without injunctive relief, Entegris will be irreparably harmed by Bartlett's actual, threatened, and/or inevitable misappropriation of its trade secrets.

117.    As a direct and proximate result of Bartlett's actual, threatened, and/or inevitable misappropriation of trade secrets, Entegris has suffered and/or will suffer substantial damages, the precise amount of which will be determined at trial.

118.    Bartlett's conduct has been willful, malicious, and outrageous and undertaken with reckless indifference to the rights or interests of Entegris.

## COUNT V – BREACH OF FIDUCIARY DUTY

119.    Bartlett owed a fiduciary duty of loyalty to Entegris at all times during his employment. The duty of loyalty required that Bartlett act in the utmost good faith in furtherance and advancement of the interests of Entegris, and to avoid acting contrary to Entegris' interests while employed by the company.

120.    As a former employee of Entegris who learned valuable trade secrets and Confidential Information during the course of his employment, Bartlett continues to owe a duty of loyalty to Entegris.

121.    This duty of loyalty prohibits Bartlett from using Entegris' Confidential Information except for Entegris' sole and exclusive benefit.

122.    Bartlett's repeated accessing and unauthorized transmission of Entegris' documents containing trade secrets and confidential information preceding the formal end of his Entegris employment without a legitimate business purpose constitutes a pattern of behavior that is against Entegris' interests and, therefore, disloyal. Such actions constitute a breach of the duty of loyalty.

123.    Upon information and belief, Bartlett breached or inevitably will breach his duty of loyalty by using Entegris' trade secrets and confidential information for his benefit or the benefit of others outside of Entegris.

124.    Upon information and belief, Bartlett breached or inevitably will breach his duty of loyalty by disclosing Entegris' trade secrets and confidential information to others outside of Entegris.

125.   Bartlett breached his duty of loyalty by misappropriating Entegris' trade secrets and confidential information.

126.   Each of the above breaches were or will be deceitful, outrageous, and unjustified.

127.   Each of the above breaches illustrates Bartlett's grossly negligent or intentional failure to act in good faith and solely for the benefit of Entegris in all matters.

128.   As a direct and proximate result of Bartlett's breach or inevitable breach of his duty of loyalty, Entegris has suffered, and/or will suffer, severe and serious economic injury and damage to its business operations and development, including irreparable harm and lost profits.

129.   Entegris is entitled to an award of punitive damages because Bartlett's misconduct was willful, wanton, malicious, outrageous, and with intent to inflict serious injury on Entegris.

## COUNT VI – CONVERSION

130.   Bartlett has wrongfully and unlawfully converted Entegris' files and data, including files and data containing Entegris' confidential and proprietary information.

131.   Bartlett has specific and identifiable files and data that he has taken from Entegris.

132.   Entegris has an immediate right to possess those files and data.

133.   Bartlett has obtained those files and data by unauthorized acts of taking, downloading, and copying those materials.

134.    Entegris has demanded the return of its property. Instead of returning the property, Bartlett has retained it.

135.    As a result of Bartlett's wrongful conversion of Entegris' confidential and proprietary information, Entegris has been damaged and is entitled to damages.

136.    Bartlett's conduct was willful, wanton, malicious, outrageous, and with intent to inflict serious injury on Entegris, so as to justify the imposition of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Entegris respectfully requests that this Court grant the following relief:

A.     Enter judgment in favor of Entegris on all counts of this Verified Complaint;

B.     Enjoin Bartlett, preliminarily until hearing, and thereafter permanently, from accessing, disclosing, or using any of Entegris' trade secrets or other confidential information;

C.     Enjoin Bartlett, preliminarily until hearing, and thereafter permanently, from breaching the obligations in the Agreement;

D.     Direct Bartlett to immediately return to Entegris all of the trade secrets and other confidential or proprietary information belonging to Entegris that is currently in the form of physical documents, including all copies or reproductions of such materials;

E.      Order expedited discovery related to Plaintiff's Motion for Restraining Order, Limited Expedited Discovery, Preliminary Injunction as follows:

      a.  Direct Bartlett to immediately make available to a third-party forensics vendor engaged by Entegris all of the electronic devices (including computers, USBs, and other devices) and accounts (including email accounts, cloud accounts, and other accounts) that he has accessed since March 2, 2021 and are in his possession, custody, and/or control, so that the vendor can examine whether Bartlett continues to possess Entegris' trade secrets and other confidential or proprietary information and what, if anything, Bartlett has done with such information;

      b.  Direct the parties to confer in an attempt to agree on a confidentiality agreement and forensic discovery protocol to include mutually-agreeable safeguards for protecting Bartlett's personal private information; and

      c.  Upon completion of the expedited discovery, direct Bartlett to return all of Entegris' trade secrets and other confidential or proprietary information from the electronic devices and accounts to which he has had access since March 2, 2021 in a forensically-sound manner in cooperation with Entegris.

F.      Direct Bartlett to file a declaration, under oath, confirming that he has returned either to Entegris directly or to its designated third-party forensics vendor all of the materials subject to the Court's Order and providing a detailed accounting of what he did with the documents and information that he took from Entegris;

G.     Award Entegris actual, compensatory, exemplary, and punitive damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs; and

H.     Award Entegris such other and further necessary and proper relief as the Court may deem just and proper.

## REQUEST FOR A JURY TRIAL

Entegris requests that this matter be heard by a jury for all matters so triable.

June 28, 2022

Respectfully submitted,

*/s/ Anitra Raiford Clement*
Anitra Raiford Clement
LEAD COUNSEL
Sarah B. O'Rourke
SHOOK, HARDY & BACON LLP
100 N. Tampa St., Suite 2900
Tampa, Florida 33602
T: 813-202-7100 | F: 813-221-8837
aclement@shb.com
sborourke@shb.com

Russell Beck (*Pro hac Vice* motion to be filed)
Stephen D. Riden (*Pro hac Vice* motion to be filed)
Hannah Tso Joseph (*Pro hac Vice* motion to be filed)
BECK REED RIDEN LLP
155 Federal Street, Suite 1302
Boston, MA 02110
(617) 500-8670 / (617) 500-8665 Fax
rbeck@beckreed.com
sriden@beckreed.com
hjoseph@beckreed.com

*Attorneys for Plaintiff Entegris, Inc.*

## VERIFIED DECLARATION

I, Chad Walberg, Business Unit Leader, Instrumentation, at Entegris, Inc., declare under penalty of perjury that I have reviewed the facts in this Complaint and verify that they are true and accurate to the best of my knowledge, information, and belief.

_____
Chad Walberg

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via email and hand delivery to counsel for Defendant Jonathan Todd Bartlett this 28th day of June 2022: Sarah Donini Rodriguez, Esq., Shutts & Bowen LLP, 300 South Orange Ave., Ste. 1600, Orlando, FL 32801.

*/s/ Anitra Raiford Clement*
*Attorney for Plaintiff*